May the attorneys that are on approach the podium please and identify yourselves for the record. Good morning, Your Honors. Daniel Ukich, it's Y-U-K-I-C-H. I'm the attorney for the appellant. Okay. Good morning. Stephanie Erickson for Founders Insurance Company. All right. We're going to give you 15 minutes each side. Mr. Ukich, do you want to reserve time for rebuttal? Sure, Judge. Five minutes. Okay. I've been told that I have not been strict enough on the 15 minutes, so I am going to hold you to the 15 minutes today, okay? No worries, Judge. All right. Mr. Ukich, do you want to begin? Good morning again, Justices. May it please the Court. Justices, I know you all know the law, so I'd like to really focus on three main points here today. The first point would be equitable estoppel, which would lead me to my ambiguity argument. And then finally, I'd like to address the defense's argument, which is that this case got handed from one attorney to another attorney, and because of that, a lawsuit was never filed. Is that an exception to the rule? What I just said, that third thing? Yeah. No, I don't believe that, but I would say that that has no relevance to the issue at point. Okay. First, I want to go over equitable estoppel, Your Honors. And there are six things that are required for equitable estoppel, and I'd like to go through each of them. The first one is the insurance company misrepresented or concealed facts through words. Here, I think that the appellate has met that requirement based on, I believe it's Mr. Jamarillo. He is the adjuster in this particular case, Justices. By sending this letter, it's – I'm sorry. He sent a letter to – Mr. Ukich, you're not contesting that the contract specifically said you have one year from the date of the last payment to file, correct? You're not contesting that? I'm contesting the – no, I'm not contesting that. That's what it says. I'm contesting that that's ambiguous. Okay. And you're not contesting the date that they were given the last payment out, correct? Well, and that's going to be part of my ambiguity because we don't know if it's when the settlement happened, when my client received payment, or when payment was disbursed to the law firm. There's no clear language in that, and that leads to my ambiguity argument. Okay. So give me what would be the last possible date under your interpretation that we could look at. Justices, I don't have that information in front of me when the payment was actually disbursed. So before your honors, the date that I only have is the date that it actually settled, which would be 12-21-2012. Okay. And suit was filed when? Suit was filed 6-9-14. Okay. So it's well after. Correct. Well after a year. Correct. Okay. Correct. All right. Go right ahead. Okay. So as soon as the first point of equity was sought, the insurance company misrepresented or concealed facts through words. Now, we sent out a demand of arbitration back on September 9, 2013, and that's the usual customary practice of our law firm to do that with the insurance companies. It's mostly uninsured low-risk and under-insured low-risk. Contracts do have provisions that require arbitration. When we sent this demand letter, this contract did not have that clause. On September 19, 2013, we received a letter from Mr. Hamarito, and that letter was to Mr. Widoliak, asking Mr. Widoliak to withdraw the demand. Now, it included the contract language that there is no arbitration, that a court of competent jurisdiction is where we will resolve this contract dispute. So it's pretty clear there that it's required that we must take legal action in a court as opposed to arbitration. However, in that letter, it completely leaves out the one-year requirement. So to me and to my client, this is misleading because it's continuing negotiations and saying, hey, look, you can't demand arbitration. However, you can file a lawsuit in court. It does not say the requirement of one year at all in that. Did you have the contract, the insurance policy? I'm sure we did, Justice. I would assume so. Yes. Okay. I mean, yeah, it seems like the letter referenced the fact that you could not go to arbitration, that you had to file a suit in a court of competent jurisdiction. It sounds like they cut it off there, and the next sentence was actually the one-year limitation. But are they under some obligation to give you every pertinent piece of the policy that talks about the lawsuit? I mean, they were – their purpose in that letter wasn't to give you – they didn't – well, tell me how you feel about this. They weren't undertaking some explanation of here, counsel, we're going to tell you everything that needs to happen. They were just saying your arbitration is wrong. You can't do it, and here's the reason why. And they gave you the language that said why you shouldn't go to arbitration. Why is it misleading that they didn't continue to tell you more about what you need to do to protect your rights? Well, obviously, they don't need to tell us what to do to protect our rights, Justice. But what I would say would be misleading is continuing negotiations, specifically one year after the date, beyond one year after the date. Specifically, there are several letters and e-mail communications after what would be the one-year date would be 12-21-2013. But at that point, how are you justifiably – how is any – I mean, at that point, the ship is sailed, so who cares what they did or what you relied on? Why does anything that happened after D-Day, so to speak, the one year, why does anything that they did matter at that point? It's inconsistent, I'll grant you. It's inconsistent with the idea that the one year had lapsed. But short of that, what's the relevance of it? Well, it leads to my argument why the contract is ambiguous, because this adjuster doesn't even know his own language in this contract. So you're saying even they didn't understand the language? Absolutely. Absolutely, Your Honor. And with that argument, because of that, even in Mr. Jaramillo's deposition, he says that, hey, look, I don't even know when he could file a lawsuit. Certainly he could file a lawsuit after that. He could file a lawsuit whenever he wants. I didn't mean to leave it out of the letter I sent, but certainly they could file a lawsuit any time they want. I wasn't aware of the provision of the one year. So certainly he doesn't even know that. And he continues to negotiate with Mr. Dododak, specifically on 2-10-14, which is after the one year, they made a $10,000 offer. If the lawsuit was completely off the table, there would be no communication. If the contract wasn't ambiguous, there would be absolutely no communication. There's no reason for them to respond to a demand. There's no reason for them to make an offer if the lawsuit's completely off the table. Again, April 25, 2014, an email from Founders to settle the case in the hopes that the matter could be settled without going to lawsuit. Right there, it leaves me to believe that they absolutely have no idea what's in that contract, because they're still saying, hey, look, I don't want you guys to file this lawsuit. Let's continue to try to talk so we can settle this matter. But how are they foreclosed from bringing that as a defense? I don't believe that they are foreclosed, but I do believe that the contract is ambiguous. Obviously, they can bring that. Certainly, they did bring that under 2-6-19. And they will have summary judgment, as your honors know. However, the contract is ambiguous. And that's my main argument here today. Okay. So getting back to the equitable style, the first ground is basically covered, as I just said. Well, let's go back to the first ground. Sure. The first ground has to be a misrepresentation, correct? Yes. Okay. And you're claiming this misrepresentation occurred after the statute of limitations had terminated. Both before and after, Justice. Well, where's the misrepresentation before? My contention is the misrepresentation is in the, after we sent the demand for arbitration letter, when we received the letter from Mr. Halgrenio stating withdraw your demand, putting the pertinent contract language that we require a legal action as opposed to arbitration, however, leaving out the one-year statute requirement. I mean, basically, the entire paragraph is in there except that last sentence of the one-year statute of limitations requirement. So that would mean to me that this is an ambiguous contract, that they're not even telling us, they're giving us the entire paragraph. You're mixing up concepts. One concept that you have is that there's an ambiguity. And the other concept that you have is that there's some misrepresentation here. I'm asking about the misrepresentation. What is being misrepresented prior to the termination of the statute of limitations? Because that's the point we have to look at. Sure. I mean, show me one thing where they have misrepresented to you at that point in time. Well, Justice, respectfully, I would say that the misrepresentation and misleading point would be leaving out that last sentence in the letter dated on September 19, 2013. Well, isn't that letter just saying that you filed a demand for arbitration? You should have filed a lawsuit. If you did, I'd like to see a copy. Isn't that what that letter is basically saying? Well, I believe that the letter is saying that let's continue to negotiate, and it's misleading the appellant by leaving that language of the one-year out. But at the time of that letter, had the statute passed? No, no, Your Honor. Okay. So the misrepresentation you're saying is in that letter, besides it being ambiguous. Well, not only that. The misrepresentation continues on after the statute. I understand that. Okay. Yes, but that is my contention as far as before the statute of limitations, Justice, respectfully. Getting back to the second issue of equitable estoppel, the insurance company knew the words were not true. Obviously, not knowing the words are not true, they misrepresented themselves by leaving out that last sentence. By the third, the plaintiff did not know the truth when the statements were made, and they acted upon those statements. Obviously, in Mr. Verdola's exposition, he said that he was unaware of the one-year statute of limitations, and he continued to rely on the negotiations with the adjuster because even after the statute of limitations, there were several communications between the two. Fourth, the insurance company intended the plaintiff to act on the conduct. They were continuing negotiations after the statute of limitations ended, based on their representation that they wanted to continue to negotiate. Fifth, the plaintiff acted in good faith and relied on that. Obviously, the plaintiff acted in good faith. We continued to try to negotiate beyond that, and at some point when the negotiations became final, when Mr. Jamarillo said, this is our final offer, you must file a lawsuit after that, certainly Mr. Jamarillo didn't know that the statute of limitations would bar this because he said, look, this is our final offer. Go ahead and file a lawsuit if you don't want it. And finally, the plaintiff's prejudice. Obviously, the plaintiff is prejudiced because the plaintiff cannot recover, which leads me to my ambiguity argument. Certainly, the ambiguity argument is the strongest argument here. The clear language of this is not even known by Founders Insurance Company, and that's the strongest argument here, Justices. They are continuing to negotiate with the plaintiff, here the appellant, after that one-year statute of limitations is barred. If this adjuster knows the language of the contract and knows that we are barred from filing any type of lawsuit past 12-21-2013, there would be no communications that existed. There's been several communications after that date, several communications that don't even talk about, oh, you're barred from filing this lawsuit. Besides that, besides their conduct, which is inconsistent with their interpretation, and I think we can all agree with that, is what about the language itself? If I'm looking at this language, which I'm doing, tell me what is ambiguous. It's our contention that what is ambiguous is one year from the last payment of the underinsured motorist to the plaintiff, appellant, in this case. Now, that can be interpreted in several different ways. It can be interpreted when the settlement happened, when money was dispersed to the law firm, or when money was actually dispersed to my client. And just as I said before, I don't have those dates in front of me. But under any of those, you would be time-barred, right? Under any of those dates. Under any of those dates. Whichever of those dates is the applicable one, even the latest of those. You still filed after a year, more than a year after that. Well, I don't know the answer to that. I can't answer that, honestly, because I don't know the date that my client was paid. But it didn't take a year for the money to get processed, I mean, right? I don't believe that it took a year, Justice. Pardon me? It would have taken a week or so, right? A couple weeks. Well, I don't know. Okay. But to be fair, you might be right, Justice, yes. Mr. Yukich, you have used up your time. Did you want to go into your rebuttal time, or do you want to say it's ten minutes for your rebuttal? You know what? Can I just have two minutes, and then I'll reserve three for rebuttal? Sure. Okay. I just want to get to my last point about the defense's argument that somehow, because the case was transferred to Mr. Verdola and to an attorney named Benjamin Kelly, that, oh, we just forgot to file a lawsuit, we weren't paying attention to this. I don't really think that that argument is relevant. I don't think it's relevant, and I don't think that that's actually what Father's Insurance thinks, because Father's Insurance didn't even know that the case was transferred. They were continuing to send correspondence to Mr. Verdola well after the file got transferred. So to make that argument is really a misrepresentation to the court, because Mr. Verdola is receiving correspondence throughout the whole thing. Mr. Kelly is not the one receiving correspondence, including this correspondence from April 25, 2014, where it says this is our final offer, Mr. Verdola. If you don't like the final offer, go ahead and file the lawsuit. So I don't think that that argument has any merit. I will reserve the rest for rebuttal, Justice. Thank you for listening. Thank you, Mr. Euclid. Ms. Erickson? Good morning. Good morning again. Before you start, I want to ask you a question. Is the $10,000 still at the table? I believe that there were similar negotiations during the course of this litigation, but I honestly don't know. So you really don't know? I don't. I can't represent one way or the other. I would like to go through the timeline as to what happened. We have Sonna Soice's accident that happens on June 9, 2011, and this is all from the record. The release is signed by her releasing the bill checks on September 20, 2012. Founders receives the UIM claim in November of 2012, and this is in the record. The payment was received by Soice on December 21, 2012. According to the record, there was communication between Peter Podoliev and Jason Jaramillo in January and March of 2013. Now, down in March of 2013, they still have nine months to file a lawsuit. The insurance policy and the declarations page were sent by Founders to Podoliev Law Firm on April 3, 2013. So they have the policy in hand within a few days of that. Is all that in the record of the case? Yes. It's all in my statement of facts. Do you agree that your adjuster continued to negotiate after that time had clearly expired? I agree that he restarted the... Why would he continue to offer them anything? Mr. Jaramillo would not have been aware of the date when the time clocks started, which would be December 21, 2013. There was no communication whatsoever between Peter Podoliev and Mr. Jaramillo between March of 2013 or when the letter was sent with the policy in April and the end of the year. And other than the letters from Podoliev's office to Founders with the demand for arbitration, in Mr. Jaramillo's response, again in September of 2013, there was zero communication between Mr. Kelly and Mr. Jaramillo. There was still an offer going out from the adjuster, wasn't there, after that year expired? You're correct. Okay, so wouldn't that mislead the plaintiff to think that they're still in the game? Well, as I said, the plaintiff is the one with the knowledge of when the clock starts. They know when they were paid. Mr. Jaramillo did not have that information. So if he did pay out after the time to file, wouldn't that, even if he paid out much less than the plaintiff was seeking, wouldn't that indicate to the plaintiff that they still had time? Doesn't that give them the impression that there's still time? His notes do say, his emails say, so you did not have to file a lawsuit. Mr. Jaramillo is clearly unaware at that time that the time to file has expired. I agree with you. Okay. But it doesn't make any difference because the contract controls. Is that your position? Correct. Okay. It doesn't make any difference what the adjuster or the representative or the founder says to anyone because the contract will always trump whatever they say. There could be situations where if, let's say the case is they're $100 apart on December 21st, I'm sure they could agree to extend the statute for a week. The adjuster would have the authority in that? Sure. So your position that the adjuster never had authority to extend the filing period, he does have the authority if it's just a few days. But he doesn't if it's a year and a half. Well, it never happened because there was no communication. So the adjuster could, if he put it in writing saying, I'm extending your time to file this until June or whenever, the adjuster could do that because your position I thought in your brief was he never had the authority to extend any type of statute. I didn't say that in your brief. I'm not trying to pin you down as a man. I'm just kind of curious as to what type of authority does an adjuster have to modify the terms of a contract? In the very limited situation that I described, my point is founders would not say, no, never mind, we're not going to honor what you said, even though it should be in writing. Okay. We would abide by that agreement if such happened, but that never happened here. They weren't even talking. Okay. And when Mr. Kelly receives the letter saying AAA is not what we do in underinsured motorist cases, he still had three months to file a lawsuit. It's common knowledge that insurance policies for uninsured or underinsured motorists have a limitations period. So to blame founders that they didn't pick up the policy and read it, I don't think the law supports that as an estoppel defense. And the cases I cited on estoppel do say that the insurance company is not obligated to read the policy to you or spell it out to you, and that the burden is on the person going forward with the claim. And Mr. Vidolyak in his deposition admitted that he never read the policy. The founder's policy is comprised of different sections. Part five is the underinsured motorist coverage section. It's two pages long. The action against the company provision is included in those two pages. The lawsuit has to be filed within one year from the date that the person claiming receives the last payment from an underinsured motorist. And there's nothing ambiguous or confusing or misleading about that provision. It's very clear. I'm just going back to the equitable estoppel defense. The burden is on the appellant to show by unequivocal evidence. It's very clear evidence that they're entitled to that relief. The judge in the underlying case didn't think there was any question. They did not meet that burden. And Founders is asking you to uphold the decision of the trial court. Thank you, Mr. Dickey. Mr. Ukich. I just want to make one final point, Justice. As you very well know, motion for summary judgment was granted by the trial court. And it essentially says that there's no genuine issue of material fact. Well, I believe that there is a genuine issue of material fact here. And that genuine issue of material fact comes from two sets of depositions. Mr. Bergoglio has depositions where he says, hey, look, I rely on Mr. Jaramillo telling me, look, let's continue to negotiate. I can even delay you filing the lawsuit. I have the authority to extend the time you file the lawsuit. Mr. Bergoglio relied on that. Mr. Jaramillo obviously denies that. Is that in writing? Pardon me? Is that in writing? If somebody is going to extend a time period, isn't it incumbent upon a lawyer to get that in writing? Absolutely. I do agree with you, Justice, on that, yes. And I'm not sure if it is in writing, but I do. This is like something your neighbor does, and they come to you and are like, well, how do I get around this? Well, you know, that's what lawyers do. You get it in writing. Absolutely. So I'm not really following your argument of they're relying on an adjuster's extension of this when they, one, didn't even know that that provision was in the contract. I'm not following you. Where are you getting this? From Mr. Bergoglio, his understanding with Mr. Jaramillo is that he had the authority to negotiate all the aspects of the claim, including the non-limited to extend the time to file a suit, if necessary, as required under the policy. So Mr. Bergoglio said that in his deposition. I believe so. I believe so, Justice. And Mr. Jaramillo, in his deposition, said, no, I never said that to Mr. Bergoglio. So you're saying that exchange between the adjuster and Mr. Bergoglio was a sufficient question of fact to preclude summary judgment? Yes. Okay. That's all I have. Thank you, Justices. Thanks. We're going to take the matter under advisement and issue an order as soon as possible. Thank you.